IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CONTRELL PLUMMER, #B14235,  Plaintiff,  v.  JAMES BELFORD, JOHN R. BALDWIN, STAZAK, HESLEY, SCOTT THOMPSON, MAC SHANE FRANK, JOHN/JANE DOES, and TOMSHACK,  Defendants. | Case No. 20-cv-01247-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Contrell Plummer, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Plummer claims he was subjected to six unconstitutional strip searches in 2018. He requests monetary damages and injunctive and declaratory relief.

The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

Plummer alleges the following: On February 6, May 4, June 13, September 18, September 25, and October 30 of 2018, Sergeant Belford, Correctional Officer Stazak, Correctional Officer Tomshack, and unknown Jane and John Does conducted group strip searches in the laundry room the of the healthcare unit at Pinckneyville. (Doc. 1, p. 6). On these occasions, inmates who were in the healthcare unit to receive various medical treatments, including Plummer, were ordered in groups of three to the laundry room. In the laundry room, Plummer and two other inmates were placed in a straight line and ordered to strip naked, while the door remained wide open. There were not any dividers or partitions placed between the inmates, and anyone walking by the room could see the inmates. (*Id.*). Before Plummer was finished getting dressed, the next set of inmates was brought into the room. (*Id.* at p. 7). During the strip search, he endured degrading and humiliating remarks about his genitals. Lieutenant Frank was notified about the unlawful strip searches by Plummer's grievances, but he "turned a blind eye." (*Id.* at p. 11).

Following the group strip search conducted on October 30, 2018, other inmates filed a PREA report against Belford. (Doc. 1, p. 7). Frank then conducted an investigation, and Belford admitted to conducting group strip searches in the laundry room of the healthcare unit. (*Id.*). In the report, Belford states that the purpose of the searches was to ensure contraband was not being moved throughout the facility. Plummer contends there are other less intrusive security measures that were already in practice, such as pat downs and surveillance. (*Id.* at p. 10). Plummer believes that the six searches did not reveal that any medication or other items that could compromise the safety or security of the facility went missing or had been taken by inmates. (*Id.*).

### PRELIMINARY DISMISSALS

Plummer identifies a group of defendants as unknown Jane and John Does who are various security staff members assigned to various positions at Pinckneyville. (Doc. 1, p. 5). He alleges

that these unknown Defendants were present during the strip searches. These allegations are not sufficient to state a claim under Federal Rule of Civil Procedure 8.

While Plummer may use "John Doe" or "Jane Doe" designations to refer to parties whose names are unknown, he must still follow Rule 8 pleading standards and include a short, plain statement of the case against each individual. By stating that an indefinite number of unknown staff members have harmed him without providing more information, all Plummer has done is establish that there is a "sheer possibility" that someone in that group harmed him. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement). Because the Complaint does not describe the individual Jane and John Doe Defendants or their conduct, he has not formed the basis of his claims against these Defendants. Thus, the claims against the Jane and John Does are dismissed without prejudice.

Plummer also lists Warden Thompson and IDOC Director Baldwin as defendants. He claims that these individuals are legally responsible for the health, safety, and over all wellbeing of every inmate at Pinckneyville. (Doc. 1, p. 3-4). This too is not sufficient to state a claim. Individuals cannot be held liable under Section 1983 solely because they are in a supervisory role. They must have been personally involved in the constitutional violation in some way. *See Knight v. Wiseman*, 590 F.3d 458, 462-63 (7th Cir. 2009). Because Plummer has not described the conduct on the part of Thompson and Baldwin or described their personal involvement in the strip searches, the claims against them are dismissed without prejudice.

Finally, Helsey is listed as a defendant but no allegations are associated with this individual in the body of the Complaint. Merely listing a defendant's name in the case caption is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).

Accordingly, any claims against Helsey are dismissed without prejudice.

### DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following counts:

**Count 1:** Fourth Amendment claim against Belford, Stazak, Frank, and Tomshack for conducting unreasonable searches in the healthcare unit in 2018.

**Count 2:** Eighth Amendment cruel and unusual punishment claim against Belford, Stazak, Frank, and Tomshack for subjecting Plummer to strip searches in the healthcare unit in 2018.

**Count 3:** Prison Rape Elimination Act claim against Belford, Stazak, Frank, and Tomshack for subjecting Plummer to strip searches in the healthcare unit in 2018.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

### Counts 1 and 2

The Seventh Circuit has held that the "Fourth Amendment protects (in a severely limited way) an inmate's right to bodily privacy during visual inspections, subject to reasonable intrusions that the realities of incarceration often demand." *Henry v. Hulett,* 969 F. 3d 769, 779 (7 Cir. 2020). A Fourth Amendment claim requires the Court to look at the "reasonableness" of the search, "considering the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.". *Id.* (internal citations and quotations omitted). While the Fourth Amendment is concerned with the *reasonableness* of the

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (7th Cir. 2007).

search, the Eighth Amendment protects against searches that are intended to humiliate and cause psychological pain. *See Mays v. Springborn,* 575 F. 3d 643, 649 (7th Cir. 2009).

Plummer claims that the searches were performed without a valid reason. To his knowledge there was not an issue with contraband entering and leaving the healthcare unit. Additionally, he asserts the searches were conducted in a semi-public manner, and the officers involved made demeaning and humilating remarks during the searches. At this point in time, Plummer has sufficiently stated a Fourth and Eighth Amendment claim against Belford, Stazak, Frank, and Tomshack for their involvement in the searches. Counts 1 and 2 will proceed against these Defendants.

### Count 3

The Prison Rape Elimination Act ("PREA") "does not give prisoners a personal right to sue for an official's failure to comply with the Act's requirements." Because Plummer does not have a cause of action under PREA, Count 3 is dismissed with prejudice. *See Summers v. Waggoner,* No. 19-cv-01338-SMY, 2020 WL 6321488, at *3 (S.D. Ill. Oct. 28, 2020) (collecting cases).

### OFFICIAL CAPACITY CLAIMS

Plummer states that he is suing all Defendants in their official and individual capacities. He cannot, however, sue Defendants in their official capacities for money damages. *See Brown v. Budz*, 398 F.3d 9044, 918 (7th Cir. 2005) (Eleventh Amendment bars official capacity claims for monetary damages). To the extent he is seeking injunctive relief, the warden of Pinckneyville is the most appropriate official capacity defendant. *See generally Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Accordingly, Counts 1 and 2 will proceed against Belford, Stazak, Frank, and Tomshack in their individual capacities. The official capacity claims against them are dismissed without prejudice. The current Warden of Pinckneyville, David Mitchell, will be added

to the docket to carry out any injunctive relief that might be ordered.

## CLASS ACTION

Plummer requests the Court to grant class action status to this case in accordance with Rule 23 of the Federal Rules of Civil Procedure. (Doc. 1, p. 12). Because Plummer is proceeding pro se, he cannot represent a class of plaintiffs. *See Lewis v. Lenc-Smith Mgf. Co.*, 784 F.2d 829, 831 (7th Cir. 1986); 28 U.S.C. § 1654; FED. R. CIV. P. 11. Therefore, to the extent that Plummer seeks class certification, the request is denied.

## DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNTS 1** and **2** shall proceed against Belford, Stazak, Frank, and Tomshack. Count 3 is **DISMISSED with prejudice.** Plummer has failed to state a claim against the John Doe Defendants, Baldwin, Helsey, and Thompson, and the claims against them are **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to **TERMINATE** them as defendants. The Clerk of Court is further **DIRECTED** to **ADD** the Warden of Pinckneyville, David Mitchell, as a defendant in his official capacity only for the purpose of implementing any injunctive relief that may be ordered.

The request for class certification is **DENIED.**

The Clerk of Court shall prepare for **Belford, Stazak, Frank, Tomshack,** and **Mitchell** (official capacity only), and John Does 1 and 2 (once identified) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant,

and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plummer, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

If judgment is rendered against Plummer and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plummer is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 16, 2021**

                                               *s/Stephen P. McGlynn*
                                               **STEPHEN P. MCGLYNN**
                                               **United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.